IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

DELROY T BOOTH, )
)
      Plaintiff, )
)
v. ) Case No. 5:18-cv-00367-MTT-MSH
)
WARDEN BOBBIT, *et al.*, )
)
      Defendants. )

## ORDER

Plaintiff, an inmate currently confined at Autry State Prison in Pelham, Georgia, filed a complaint seeking relief under 42 U.S.C. § 1983. Pending before the Court is Defendants Bobbitt and Farley's motion for summary judgment (ECF No. 40). Defendants' motion is granted. Also pending is Plaintiff's motion requesting ruling on summary judgment (ECF No. 49). Plaintiff's motion is denied.

## BACKGROUND

Plaintiff's claims arise from his confinement at Hays State Prison ("HSP") and Baldwin State Prison ("BSP"). Plaintiff alleges he was housed in protective custody at HSP beginning in May 2016. Compl. 4, ECF No. 1. He filed a civil rights complaint against HSP officials in March 2018. *Id.* at 3; *see* Complaint, *Booth v. Allen*, No. 4:18-cv-69 (N.D. Ga. Apr. 10, 2018), ECF No. 2. He states HSP officials transferred him to BSP on June 14, 2018, in retaliation for filing his complaint. Compl. 3-4. Upon arriving at BSP, Plaintiff asked the BSP mental health counselor to place him in protective custody because he believed prison officials would "use inmates to retaliate against him" for filing his complaint. *Id.* at

4. He contends the mental health counselor stated he would be placed in protective custody. *Id.* Plaintiff avers he was placed in a "one-man holding cell," wrote a witness statement concerning his lawsuit, and handed the statement to Defendant Farley. *Id.*

According to Plaintiff, Defendant Farley then transferred him to a housing unit run by Defendant Farley, placed him in a cell by himself, and wrote "discontinue from [Administrative Crisis Unit]" on his cell assignment chart. *Id.* He alleges Defendants Bobbitt and Farley and other BSP officials denied him "monthly incentive meals," telephone access, food and clothing orders, and holiday meals based on his cell assignment. *Id.* at 5. When Plaintiff complained about these deprivations, he contends Defendants told him "go to [general] population and you will receive everything you are entitled to." *Id.* He avers Defendants want him housed in general population "so they can give word to [BSP] that [Plaintiff is] in general population" to allow prisoners and officials to retaliate against him. *Id.*

The Court received Plaintiff's complaint (ECF No. 1) on October 4, 2018. He raised claims against multiple BSP and Georgia Department of Corrections ("GDOC") officials. *See generally* Compl. 2-8. At this stage, only Plaintiff's retaliation claims against Defendants Bobbitt and Farley remain. R. & R. 8-14, Nov. 20, 2018, ECF No. 7; Order 1-2, Jan. 7, 2019, ECF No. 13 (adopting report and recommendation). Defendants moved for summary judgment (ECF No. 40) on August 8, 2019. The Court received Plaintiff's response (ECF No. 43) on August 28, 2019. Defendants' motion is ripe for review.

## DISCUSSION

**I.  Plaintiff's Supplemental Claim**

The Court received Plaintiff's motion in opposition to Defendants' summary judgment (ECF No. 37) on July 10, 2019.  Although styled as a response to Defendants' motion for summary judgment (ECF No. 40), the Court construed Plaintiff's motion as a motion to supplement complaint because he raises new factual allegations, asserting Defendant Bobbitt conspired to transfer him to GSP and continues to have GSP officials threaten him and deprive him of benefits.  Order 2-5, Jan. 2, 2020, ECF No. 48; Mot. for Opp'n to Defs.' Summ. J. 4-7, ECF No. 37.  The Court ordered Defendants to respond to these allegations on January 2, 2020.  Order 5, ECF No. 48.  Defendants timely responded (ECF No. 50) on January 16, 2020.  Resp. to Ct. Order 1-8, ECF No. 51.

Defendants argue (1) the Court should conduct preliminary screening of Plaintiff's claims under 28 U.S.C. §§ 1915(e) and 1915A, (2) the Court should construe Plaintiff's motion as a response to Defendants' motion for summary judgment, and (3) Plaintiff's claims are unsubstantiated.  *Id.* at 3-8.  Defendants also assert that Plaintiff has raised his retaliatory transfer allegations against the same defendants in another action pending before the U.S. District Court for the Southern District of Georgia.  *Id.* at 3; *see* Compl. at 1-8, *Booth v. Bobbitt*, No. 6:19-cv-00069 (S.D. Ga. July 19, 2019), ECF No. 1.  "When a plaintiff files a second complaint alleging the same cause of action as a prior, *pending*, related action, the second complaint may be dismissed."  *Oliney v. Gardner*, 771 F.2d 856,

859 (5th Cir. 1985) (citations omitted) (emphasis in original). "A district court enjoys substantial discretion to manage its docket efficiently to avoid duplicate litigation. Thus, a court may dismiss an action when a prior pending action has been filed as long as the 'controlling issues in the dismissed action will be determined in the other lawsuit.'" *Holliday v. City of Newington*, No. 3:03-cv-1824, 2004 WL 717160, at *1 (D. Conn. Mar. 19, 2004) (quoting Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 5C Federal Practice and Procedure § 1360 (3d ed.)); *see also Hines v. Nazaire*, 5:15-CV-421 (MTT), 2017 WL 1156740, at *1 n.2 (M.D. Ga. Mar. 28, 2017).

Here, Plaintiff first raised his retaliatory transfer claim when he filed his motion on July 4, 2019.[1] Plaintiff filed his complaint raising the same claim in the Southern District of Georgia on July 19, 2019. Compl. at 1-8, *Booth v. Bobbitt*, No. 6:19-cv-00069 (S.D. Ga. July 19, 2019), ECF No. 1. Even though he filed his motion with this Court before he filed his complaint with the Southern District of Georgia, his claim was not pending in this Court until the Court granted his motion to supplement on January 2, 2020. *See* Order 2-5, ECF No. 48; Fed. R. Civ. P. 15(d) (requiring leave of Court to supplement a pleading). Consequently, at the time Plaintiff's supplementary retaliatory transfer claim became pending in this

---

[1] Although the Court did not receive Plaintiff's motion until July 10, 2019, Plaintiff signed the motion on July 4, 2019. "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012) (internal quotation marks omitted). "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it." *Id.*

4

Court, his claim had been pending in the Southern District of Georgia for nearly six months. Therefore, Plaintiff is barred from raising this claim in this Court because he raised "the same cause of action as a prior, *pending*, related action" in the Southern District of Georgia. *Oliney*, 771 F.2d at 859. Plaintiff's claim is dismissed.

## II. Defendants' Motion for Summary Judgment

Defendants argue they are entitled to summary judgment because they did not retaliate against Plaintiff in violation of his First Amendment rights. Br. in Supp. of Mot. for Summ. J. 2-6, ECF No. 40-1. Defendants' motion is granted.

### A. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

### B. Undisputed Material Facts

While incarcerated at HSP, Plaintiff filed a civil rights complaint against HSP

5

officials. Compl. 3; *see* Complaint, *Booth v. Allen*, No. 4:18-cv-69 (N.D. Ga. Apr. 10, 2018), ECF No. 2. Plaintiff was housed in protective custody at HSP for two years. Pl.'s Dep. 20:12-17, 21:14-24, ECF No. 40-3. Plaintiff alleges he requested protective custody at HSP because an officer "tricked [Plaintiff] into helping him handcuff a door," and, as a result, inmates threatened him. *Id.* at 20:20-21:18. Plaintiff was transferred from HSP to BSP on June 14, 2018. *Id.* at 10:21-23, 21:19-21. Defendant Bobbitt is the Warden of BSP. Bobbitt Decl. ¶ 1. Defendant Farley is employed at BSP by GDOC. Answer 3, ECF No. 26.

Upon arrival at BSP, Plaintiff was placed in administrative segregation as a "new arrival [and] pending bedspace." Bobbitt Decl. Ex. 6, at 2, ECF No. 40-8. Plaintiff requested protective custody. *Id.* at 23:09-23:12, 28:01-04; Bobbitt Decl. ¶ 7, ECF No. 40-4. Plaintiff avers he was entitled to protective custody at BSP because he received protective custody at HSP, he "never signed off of protective custody at [HSP]," and his situation had not changed at BSP. Pl.'s Dep. 28:20-29:21; *see also* Bobbitt Decl. Ex. 6, at 1. Plaintiff was denied protective custody. Pl.'s Dep. 23:12-15; Bobbitt Decl. ¶ 12. Instead, he was placed in a one-person cell in administrative segregation. Pl.'s Dep. 23:16-18, 28:05-07, 31:22-24, 32:05-22, 33:15-18; Bobbitt Decl. ¶¶ 7, 13. Plaintiff contends he wrote a statement concerning the lawsuit he filed at HSP and his protective custody request and gave the statement to Defendant Farley. Pl.'s Dep. 28:08-19, 37:23-38:16, 43:23-44:16.

Plaintiff did not receive the benefits—access to a kiosk machine, phone calls, monthly incentive meals, holiday food packages, and clothing packages—

which were available to inmates in general population. *Id.* at 34:06-35:10. No inmates in protective custody or administrative segregation at BSP receive these privileges. *Id.* at 35:11-37:17. Plaintiff, however, alleges that eight "mental-health" inmates are housed in one-person cells in his building but receive the same benefits as inmates in general population. *Id.* at 41:04-43:08. Defendants Bobbitt and Farley told Plaintiff he would receive these benefits if he agreed to return to general population. *Id.* at 37:23-38:20; Pl.'s Resp. to Defs.' SMF 5, ECF No. 43-1. Plaintiff refused to return to general population. Pl.'s Dep. 38:21-39:05, 39:19-40:19; Pl.'s Resp. to Defs.' SMF 5; Bobbitt Decl. ¶ 13.

On July 20, 2018, Plaintiff received a thirty-day segregation hearing. Bobbitt Decl. Ex. 5, at 1, ECF No. 40-7. Plaintiff was informed he was placed in administrative segregation for "failure to follow instructions" because he "refused housing." *Id.* Plaintiff stated he wanted to be transferred back to HSP, but BSP officials decided he would remain in administrative segregation. *Id.* On October 18, 2019, Plaintiff received a 120-day segregation hearing. Bobbitt Decl. Ex. 7, at 1, ECF No. 40-9. He stated he wanted protective custody, and BSP officials again decided he would remain in administrative segregation. *Id.* Plaintiff was transferred to GSP on April 25, 2019. Pl.'s Dep. 10:22-25.

C. <u>Retaliation Standard</u>

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citation omitted). A prison official violates an inmate's First

7

Amendment rights when the official retaliates against the inmate for filing lawsuits or grievances. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (per curiam). To establish retaliation in violation of the First Amendment, an inmate must prove three elements: "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted).

The second element—retaliatory conduct—is an objective test, requiring a plaintiff to show that "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254. The third element—causal connection—is a subjective test which "asks whether the defendants were subjectively motivated to discipline" because the plaintiff engaged in protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008) (citation omitted). Plaintiff may establish a causal connection through "a sequence of events from which one could, without more, plausibly infer a retaliatory motive." *Smith v. Fla. Dep't of Corr.*, 375 F. App'x 905, 911 (11th Cir. 2010) (per curiam) (citing *Cain v. Lane*, 857 F.2d 1139, 1141-43 (7th Cir. 1988)). An inmate's conclusory allegations, taken alone, are insufficient to support a retaliation claim. *Spaulding v. Poitier*, 548 F. App'x 587, 593 (11th Cir. 2013) (per curiam) (holding that the district court properly granted defendants' motion for summary judgment where inmate plaintiff's retaliation claim was "supported only

by his conclusory assertions") (citing *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)).

D.   Defendants' Motion

Defendants argue the undisputed material facts show they did not retaliate against Plaintiff for writing a statement about his lawsuit he filed while incarcerated at HSP or for requesting protective custody at BSP.[2] Br. in Supp. of Mot. for Summ. J. 4-6. The Court agrees.

The Court assumes, and Defendants do not contest, that Plaintiff satisfies the first element of his retaliation claim because writing a statement related to a lawsuit and requesting protective custody both constitute protected speech under the First Amendment. *See Wright*, 795 F.2d at 968 (holding that inmate plaintiff stated a claim for retaliation "by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances"); *Smith v. Villapando*, 286 F. App'x 682, 685 (11th Cir. 2008) (per curiam) (holding that district court erred in dismissing retaliation claim where plaintiff alleged he was placed in disciplinary confinement for a fabricated reason and in response for requesting protective custody). The Court also assumes, without deciding, that Plaintiff satisfies the second element of his retaliation claim because his placement in administrative segregation and denial of benefits "would likely deter a person of ordinary firmness

---

[2]   Upon preliminary review, the Court dismissed Plaintiff's claims that Defendants retaliated against him for filing his lawsuit. R. & R. 8-9, ECF No. 7 ("Plaintiff has . . . failed to plausibly allege that the Defendants conspired with [HSP] officials to retaliate against Plaintiff for filing his lawsuit."); Order 1-2, Jan. 7, 2019 (adopting report and recommendation).

from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254. Defendants argue Plaintiff fails to satisfy the third element of his retaliation claim because his placement in administrative segregation and denial of benefits were not causally connected to his written statement or request for protective custody. Br. in Supp. of Mot. for Summ. J. 4-6; *see Bennett*, 423 F.3d at 1250 (requiring a plaintiff to show, *inter alia*, "that there is a causal connection between the retaliatory actions and the adverse effect on speech" to prove retaliation).

First, Plaintiff argues Defendants retaliated against him by placing him in administrative segregation because he wrote a statement concerning his lawsuit and requested protective custody. Mot. for Opp'n to Defs.' Summ. J. 2-4; Pl.'s Resp. to Defs.' Mot. for Summ. J. 2-5, 7-9, 11-12, ECF No. 43. He also states he was never accused of a prison disciplinary infraction to justify placement in administrative segregation. Pl.'s Resp. to Defs.' Mot. for Summ. J. 2-3. Plaintiff admits that Defendants never stated that they placed him in administrative segregation or denied him benefits because he wrote his statement or requested protective custody. Pl.'s Dep. 44:18-23. Further, the evidence shows that Plaintiff was initially placed in administrative segregation upon his transfer to BSP on June 14, 2018, as a "new arrival [and] pending bedspace." Bobbitt Decl. Ex. 6, at 2. GDOC SOP 209.06 permits prison officials to house inmates in administrative segregation "pending a transfer or . . . holdover status during transfer." Bobbitt Decl. Ex. 3, at 3, ECF No. 40-5. The next day, on June 15, 2018, prison officials noted Plaintiff had requested protective custody and decided he should remain in

10

segregation until they determined whether he qualified for protective custody. Bobbitt Decl. Ex. 6, at 1. GDOC SOP 209.06 also permits officials to house inmates in administrative segregation "pending classification." Bobbitt Decl. Ex. 3, at 3.

GDOC SOP 209.06 requires an inmate requesting protective custody to "list who the [inmate] thinks might hurt him/her, if known." *Id.* at 3. Defendant Bobbitt avers Plaintiff "was denied entry into Protective Custody because he could not provide information or the name of anyone at the facility who would want to harm him." Bobbitt Decl. ¶ 12. While Plaintiff contends he was entitled to protective custody until he "signed off" of it based on his previous assignment to that unit at HSP, he cites no provision supporting that contention. Pl.'s Resp. to Defs.' Mot. for Summ. J. 6. When an inmate is denied protective custody, "the offender may be returned to the general population." Bobbitt Decl. Ex. 3, at 3. Plaintiff, however, alleges Defendants sought to transfer him to general population because there, they will conspire with other inmates to retaliate against him. Pl.'s Resp. to Defs.' Mot. for Summ. J. 7. He admits he refused to return to general population because he believed he was entitled to protective custody. Pl.'s Dep. 38:21-39:05, 39:19-40:19; Pl.'s Resp. to Defs.' SMF 5.

After Plaintiff was denied protective custody, Defendant Bobbitt avers Plaintiff "was allowed to remain in Administrative Segregation at [BSP] because he refused to be returned to the general population." Bobbitt Decl. ¶ 13. Plaintiff admits he wanted to live in a one-person cell at BSP. Pl.'s Dep. 33:15-34:05.

Plaintiff's subsequent administrative segregation review hearings indicate he remained in segregation for "failure to follow instructions (refused housing)." Bobbitt Decl. Ex. 5, at 1; Bobbit Decl. Ex. 7, at 1. Therefore, contrary to Plaintiff's conclusory assertions, the evidence shows he remained in administrative segregation for refusing to return to general population, and this was not causally connected to his statement concerning his lawsuit or his request for protective custody.

Second, Plaintiff argues Defendants retaliated against him by denying him benefits received by inmates housed in general population. Pl.'s Resp. to Defs.' Mot. for Summ. J. 4-6, 12-13. Specifically, he claims he was entitled to monthly incentive meals from Burger King and Taco Bell, special holiday meals and food packages, the ability to use the kiosk machine at all times, and clothing packages. *Id.* at 12; Pl.'s Dep. 34:11-23. He alleges that eight other inmates housed in one-person cells in his building receive these same benefits as inmates in general population. *Id.* at 41:04-43:08. Plaintiff contends the denial of these benefits was causally connected to his written statement and request for protective custody. Pl.'s Resp. to Defs.' Mot. for Summ. J. 6, 13.

Defendants argue Plaintiff did not receive these benefits because inmates housed in administrative segregation are not entitled to the same benefits as those housed in general population. Br. in Supp. of Mot. for Summ. J. 5. Plaintiff, however, contends that he retained protective custody status from HSP and that inmates in protective custody are entitled to these benefits. Pl.'s Resp. to Defs.'

Mot. for Summ. J. 4-6. GDOC SOP 209.06 provides that inmates in protective custody "should be allowed to participate in as many as possible of the programs afforded the general population, providing such participation does not threaten facility security." Bobbitt Decl. Ex. 3, at 2. By contrast, inmates "in administrative segregation because of behavioral problems should be provided with programs conducive to their well-being." *Id.* As stated above, Plaintiff was housed in administrative segregation for behavioral problems because he failed to follow instructions by refusing to return to general population when prison officials denied his protective custody claim. Pl.'s Dep. 38:21-39:05, 39:19-40:19; Bobbitt Decl. ¶ 13; Bobbitt Decl. Ex. 5, at 1; Bobbit Decl. Ex. 7, at 1. Additionally, to the extent he alleges eight inmates in his building were treated differently and received the benefits, Plaintiff admits they were housed there for "mental-health" reasons—not for disciplinary issues. Pl.'s Dep. 41:04-43:08. Therefore, under GDOC SOP 209.06, he was not entitled to all of the programs offered to inmates housed in general population. Bobbitt Decl. Ex. 3, at 2.

Apart from his conclusory allegations, Plaintiff offers no evidence to show that he was denied benefits as a form of retaliation rather than through an application of this policy.[3] These allegations are insufficient to support his

---

[3] Plaintiff also filed what he alleges to be handwritten transcriptions of prison grievances and receipts thereof. *See* Compl. Ex. A, ECF No. 1-1; Compl. Ex. B, ECF No. 1-2; Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1, ECF No. 43-2; Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 2, ECF No. 43-3; Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 3, ECF No. 43-4. These documents simply restate the arguments and allegations raised in his complaint, deposition, and response. *See generally* Compl.; Pl.'s Dep.; Pl.'s Resp. to Defs.' Mot. for Summ. J.

retaliation claim. *See Spaulding*, 548 F. App'x at 593. Because Plaintiff fails to show that that the alleged retaliatory conduct—placement in administrative segregation and denial of benefits—was connected to his protected speech—writing a statement about his lawsuit and requesting protective custody—Defendants are entitled to summary judgement on his retaliation claim. Defendants' motion is granted.[4]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 40) is granted, Plaintiff's claims advanced in his motion for opposition to summary judgment (ECF No. 37) are dismissed, and Plaintiff's motion requesting ruling on his opposition to summary judgment (ECF No. 49) is denied as moot.

SO ORDERED, this 27th day of January, 2020.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT

---

[4] Plaintiff also filed a motion requesting ruling on his opposition to Defendants' motion for summary judgment (ECF No. 49). He restates his arguments opposing Defendants' motion and attached more alleged handwritten transcripts of prison grievances and GDOC policies. *See* Mot. for Ruling on Opp'n to Summ. J. 1-4, ECF No. 49; Exs. 1-3 in Supp. of Mot. for Ruling on Opp'n to Summ. J., ECF Nos. 49-1, 49-2, 49-3. The Court has considered Plaintiff's arguments in granting Defendants' motion for summary judgment (ECF No. 40). Plaintiff's motion is thus denied as moot.